UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONATA ROMELLE CHESTANG,

     Plaintiff,

v.                          Case No.:  8:21-cv-482-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

Plaintiff Donata Romelle Chestang filed a Complaint on March 1, 2021. (Doc. 1).  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits.  The Commissioner filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed separate memoranda detailing their respective positions.  (Docs. 16, 20, 25).  For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II.      Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on July 17, 2018, alleging a disability onset date of May 31, 2018.  (Tr. at 19).[1]  Plaintiff's claim was denied initially on March 13, 2019, and upon reconsideration on May 8, 2019.  (*Id.*).  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ Carl C. McGhee held a hearing on February 13, 2020.  (*Id.* at 41-48; *see also* Tr. at 19).  The ALJ issued an unfavorable decision on July 14, 2020.  (*See id.* at 19-29).  The Appeals Council subsequently denied Plaintiff's request for review on January 6, 2021.  (*Id.* at 1-3).  Plaintiff then filed her Complaint with this Court on March 1, 2021, (Doc. 1), and

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed her claim after March 27, 2017.

the parties consented to proceed before a United States Magistrate Judge for all purposes, (Docs. 11, 13).  The matter is, therefore, ripe for the Court's review.

III.     **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2021.  (Tr. at 21).  At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 31, 2018, the alleged onset date.  (*Id.*).  At step two, the ALJ determined that Plaintiff has the following severe impairments:  "obesity; multiple sclerosis/other specified disorders involving the immune mechanism; osteopenia; transverse myelitis; spondylosis; chronic pain syndrome; myalgia;

lumbago; and degenerative changes of the cervical spine (20 [C.F.R. §] 404.1520(c))." (*Id.*).

At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525[,] and 404.1526)." (*Id.* at 23).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC"):

> [T]o lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour day; and stand and/or walk for 6 hours in an 8-hour day. The claimant requires a sit/stand option with an alternating interval of one to two hours. She can occasionally reach above shoulder level with the right arm, and frequently reach above shoulder level with the left arm. She can constantly reach waist to chest with both arms, push and/or pull with the upper extremities, and handle, finger, and feel with both hands. The claimant cannot climb ladders and scaffolds, balance, kneel, crouch, or crawl. She can occasionally stoop and climb ramps and stairs. The claimant cannot work around high, exposed places; moving, mechanical parts; humidity and wetness; pulmonary irritants; extreme cold; extreme heat; or vibrations.

(*Id.* at 25). The ALJ also determined that Plaintiff "is capable of performing past relevant work as a Medical Clerk, Sales Agent, Financial, and Administrative Clerk. This work does not require the performance of work-related activities precluded by the claimant's [RFC] (20 [C.F.R. §] 404.1565)." (*Id.* at 28).

For those reasons, the ALJ held that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 31, 2018, through the date of this decision (20 [C.F.R. §] 404.1520(f))." (*Id.* at 29).

## IV.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*,

979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

**V.      Analysis**

On appeal, Plaintiff raises three issues.  As stated by Plaintiff, the issues are:

1.      The ALJ's analysis of the medical opinion is contrary to Agency authority and Eleventh Circuit precedent;

2.      The ALJ's credibility assessment is generally defective because of the above error and specifically so because of his failure to consider Plaintiff's strong work history in his assessment; and

3.      The decision in this case, by an ALJ and Appeals Council AAJ deriving their authority from the Commissioner who was not constitutionally appointed, is constitutionally defective, requiring remand.

(Doc. 16 at 3, 17, 19).  The Court finds it appropriate to address the issues in a more logical order.  Accordingly, the Court first addresses Plaintiff's third issue – whether the decision here is constitutionally defective, requiring remand.  Next, the Court considers Plaintiff's first issue – whether the ALJ erred in his assessment of the medical opinion evidence.  Finally, the Court will consider Plaintiff's second issue – whether the ALJ erred in completing a subjective symptom determination.

**A.      Whether 42 U.S.C. § 902(a)(3) Necessitates a Rehearing.**

Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3), (the "removal provision").  Under § 902(a)(3), the SSA's Commissioner is appointed to a six-year term and may not be removed from office by the President without a showing of cause.  *See* 42 U.S.C. § 902(a)(3).

Plaintiff essentially argues that the § 902(a)(3) removal provision provides unconstitutional tenure protection to the Commissioner of the SSA, violates the separation of powers, and, therefore, the SSA's structure is constitutionally invalid. (*See* Doc. 16 at 19-21 (citing 42 U.S.C. § 902(a)(3); *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020))).  To that end, Plaintiff impliedly asserts that Commissioner Andrew Saul was subject to the removal provision's allegedly unconstitutional tenure protection and, thus, any actions taken by him or pursuant to his authority were unconstitutional.  (*See id.*).  For example, Plaintiff argues that, because Commissioner Saul delegated his authority to the ALJ who issued a decision in Plaintiff's case and to the Appeals Council Judges, Plaintiff's claim was adjudicated by individuals who "had no lawful authority to do so."  (*See id.* at 20-21 (citations omitted)).  Plaintiff also asserts that her claim was decided under "a presumptively inaccurate legal standard" because Commissioner Saul issued regulations under which Plaintiff's application was decided.  (*Id.* at 20).

The Commissioner "*agree[s]* that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause," (Doc. 20 at 13 (emphasis added) (citing Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op. O.L.C. ----, 2021 WL 2981542 (July 8, 2021))), but disagrees that the removal provision necessitates a remand of Plaintiff's case, (*id.* at 14 (citation omitted)).  Specifically, the Commissioner contends that Plaintiff cannot show a nexus between 42 U.S.C. § 902(a)(3)'s removal provision and any alleged harm suffered by Plaintiff.

(*See id.* at 15-26 (citing *Collins v. Yellen*, 141 S. Ct. 1761 (2021); *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021))).

The Commissioner raises two arguments in support of this contention.  First, the Commissioner argues that because ALJ McGhee served under a ratification of his appointment by former Acting Commissioner Nancy Berryhill, there was no connection between ALJ McGhee's decision and the removal provision.  (*See id.* at 16-18 (citations omitted)).  Because Acting Commissioner Berryhill was not subject to any tenure protection under 42 U.S.C. § 902(a)(3), the Commissioner asserts that any potential nexus between the removal provision and the decision in Plaintiff's case was severed.  (*See id.*).  Second, even if Plaintiff's case were decided under the authority of a Commissioner subject to the removal provision, the Commissioner argues that Plaintiff "cannot show that the removal restriction 'inflict[ed] compensable harm' on her."  (*Id.* at 18-22 (alteration in original) (citing *Collins*, 141 S. Ct. at 1789)).

The Commissioner next argues that Plaintiff's rehearing request should be denied under the harmless error doctrine, (*id.* at 23 (citations omitted)), the *de facto* officer doctrine, (*id.* at 24 (citations omitted)), the rule of necessity (*id.* at 24-25 (citations omitted)), and broad prudential considerations, (*id.* at 25-26 (citations omitted)).

By way of reply, Plaintiff addresses several arguments posited by Defendant. (*See* Doc. 25 at 1-10).  First, Plaintiff asserts that she "has standing to bring this action" because she "sustained a sufficient injury [when she] receive[d] an adverse

determination on his [sic] disability claim from both the Commissioner's ALJ and the [Appeals Council]," despite that the ALJ and Appeals Council "had no valid delegation of authority to issue rulings." (*Id.* at 2-3). Second, Plaintiff reiterates her argument that under *Collins v. Yellen*, 141 S. Ct. 1761, 1778-89 (2021), the removal restriction at issue is unconstitutional and implicates separations of powers. (*Id.* at 3-4 (citations omitted)). Third, Plaintiff argues that the Commissioner "fail[ed] to respond to h[er] assertions on the illicit actions of the [Appeals Council]," and, therefore, the Court should remand by finding that the Commissioner abandoned the issue. (*See id.* at 4-6 (citations omitted)). Fourth, Plaintiff argues that the Commissioner cannot rely on the fact that the ALJ "was properly appointed by an Acting Commissioner," because "[t]he ALJs [sic] or [Appeals Council] judge's appointment is entirely distinct from their exercise of authority." (*Id.* at 6). Fifth, Plaintiff argues that she need not show either causation or harm because when "government actors exercis[e] power they d[o] not lawfully possess, . . . causation and harm should be presumed." (*Id.* at 6-7 (citations omitted)). Sixth, Plaintiff contends that harmless error cannot apply in this case. (*Id.* at 8). Seventh, Plaintiff argues that the *de facto* officer doctrine does not apply to basic constitutional protections. (*Id.* (citations omitted)). Eighth, Plaintiff asserts that the rule of necessity should not apply because any necessity was caused by the government's own unconstitutional behavior. (*Id.* at 9). Finally, Plaintiff argues that the Commissioner's "broad prudential concerns" argument lacks merit and "is merely

SSA's invitation to this Court to make up law where none exists." (*See id.* (citations omitted)).

On June 29, 2020, in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), the United States Supreme Court held that a "for-cause" removal restriction on the President's executive power to remove the Consumer Financial Protection Bureau's ("CFPB") director violated constitutional separation of powers, but that the removal provision was severable such that the other provisions relating to the CFPB's structure and duties "remained fully operative without the offending tenure restriction." *Seila L. LLC*, 140 S. Ct. at 2209 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010)).

Thereafter, on June 23, 2021, in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the United States Supreme Court held that the Federal Housing Finance Agency ("FHFA") director's statutory for-cause removal protection was similarly unconstitutional. *Collins*, 141 S. Ct. at 1783. The Court also distinguished the unconstitutional removal provision in *Collins* from similar appointment provisions, *see, e.g.*, *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), noting that:

> All the officers who headed the FHFA during the time in question were properly *appointed*. Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void.

*Id.* at 1787 (emphasis in original). The Court did not, however, rule out the potential that an unconstitutional removal provision could "inflict compensable harm." *Id.* at 1788-89. To that point, the *Collins* Court listed examples of how compensable harms might be identified, stating:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id.*

In this matter, the Commissioner agrees with Plaintiff that 42 U.S.C. § 902(a)(3) is unconstitutional because it violates the separation of powers. (Doc. 20 at 13 (citing Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op. O.L.C. ----, 2021 WL 2981542 (July 8, 2021))). However, despite the parties' agreement, the Court need not determine the constitutionality of 42 U.S.C. § 902(a)(3)'s removal provision. In short, even assuming *arguendo* that the removal provision is unconstitutional, it would not necessitate a rehearing of Plaintiff's claim because the provision is severable and there is no evidence to suggest a nexus between the removal provision and a compensable harm to Plaintiff. Accordingly, the Court assesses whether the removal provision necessitates a rehearing of Plaintiff's claim, assuming *arguendo* that the provision is unconstitutional.

Plaintiff essentially contends that the allegedly unconstitutional nature of section 902(a)(3) automatically voids the Social Security Administration's decision in this case. (*See* Docs. 16 at 19-21; 25 at 1-10). On the other hand, the Commissioner raises a host of arguments as to why Plaintiff's rehearing request should be denied. (*See* Doc. 20 at 13-26).

Here, the Court agrees with the Commissioner's arguments and finds a rehearing is not required based solely on the allegedly unconstitutional removal provision for two reasons: (1) the removal provision is severable from the remainder of the Social Security Act; and (2) Plaintiff has failed to show how the allegedly unconstitutional removal provision harmed her.

In the first place, the Court finds that the Commissioner did not abandon or waive her argument as to the Appeal Council's decision. In her motion, Plaintiff includes a singular reference to the constitutionality of the Appeals Council's decision by perfunctorily stating, "[a]ll this is just as true with respect to SSA's Appeals Council judges." (Doc. 16 at 20; *see generally* Doc. 16). Notably, this statement is neither supported by citations to relevant authority nor persuasive argument. (*See* Doc. 16). Thus, if anything, Plaintiff failed to sufficiently raise a challenge to the constitutionality of the Appeals Council's decision, such that her is waived. *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 n.2 (11th Cir. 2016) (finding that a plaintiff's perfunctory

argument was abandoned).  In any event, the Court considers Plaintiff's arguments as to both the ALJ and the Appeals Council below.

The Court in *Seila Law* noted that "one section of a statute may be repugnant to the Constitution without rendering the whole act void."  *See Seila L. LLC*, 140 S. Ct. at 2208.  Based on this principle, the Court is not persuaded by Plaintiff's broad argument that 42 U.S.C. § 902(a)(3)'s removal provision divests the Commissioner of all authority under the Social Security Act or renders *all* of the Commissioner's actions "presumptively inaccurate." (*See* Doc. 16 at 19-21).  Rather, like the offending provision in *Seila Law*, the Court finds that 42 U.S.C. § 902(a)(3) can be severed from the remainder of the Act because the SSA can continue to fully function without the presence of the allegedly unconstitutional provision.  *See Seila L. LLC*, 140 S. Ct. at 2209; *see also Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530, at *5 (M.D. Fla. Dec. 21, 2021), *report and recommendation adopted,* 2022 WL 61217 (M.D. Fla. Jan. 6, 2022) (citations omitted) (finding that remand based on the allegedly unconstitutional nature of 42 U.S.C. § 902(a)(3) is unwarranted based, in part, on its severability from the remainder of the Act).  Thus, the Court finds that remand for a rehearing on this issue is not warranted.

Moreover, while the *Collins* Court recognized the potential that an unconstitutional removal provision could "inflict compensable harm," *see Collins*, 141 S. Ct. at 1788-89, the Court has found no evidence suggesting that there is a connection between the removal provision and any possible harm to Plaintiff.  For

example, Plaintiff has not shown that the President could not remove Mr. Saul as a result of the alleged unconstitutional tenure, undermining the existence of a nexus between the provision and the unfavorable decision.  Plaintiff fails to show that absent the alleged unconstitutional provision, Plaintiff's claim would have been decided differently at either the ALJ or the Appeals Council level.  Indeed, Plaintiff has pointed to no portion of either the ALJ's decision or the decision of the Appeals Council that she contends would have been decided differently but for the alleged unconstitutional provision.  Finally, Plaintiff's claim was adjudicated by an ALJ whose tenure was ratified by former Acting Commissioner Berryhill.  Because former Acting Commissioner Berryhill was not subject to 42 U.S.C. § 902(a)(3)'s tenure protection, any argument that a nexus exists between § 902(a)(3) and a compensable harm to Plaintiff is further strained.

Furthermore, while the United States Supreme Court has not addressed this issue directly, Justice Kagan forecasted its outcome in *Collins*:

> [T]he majority's approach should help protect agency decisions that would never have risen to the President's notice.  Consider the hundreds of thousands of decisions that the [SSA] makes each year.  The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block . . . [b]ut given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone.  That makes sense. . . .  When an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue.

*See id.* at 1802 (Kagan, J., concurring). Justice Kagan's reasoning supports the Court's conclusion that there is no evidence in the instant case to suggest that a nexus exists between § 902(a)(3) and any compensable harm to Plaintiff.

For these reasons, even assuming *arguendo* that 42 U.S.C. § 902(a)(3)'s removal provision is unconstitutional, the Court finds that the removal provision does not necessitate remand or a rehearing of Plaintiff's claim. *See Seila L. LLC*, 140 S. Ct. 2183; *Collins*, 141 S. Ct. 1761; *see also Tibbetts*, 2021 WL 6297530, at *5, *report and recommendation adopted,* 2022 WL 61217 (holding that remand based on the allegedly unconstitutional nature of 42 U.S.C. § 902(a)(3) is unwarranted); *Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357-GKS-EJK, 2021 WL 6334838, at *4 (M.D. Fla. Nov. 23, 2021) (finding that a plaintiff had failed to state a claim upon which relief could be granted because the plaintiff could not establish that the Acting Commissioner's unconstitutional tenure protection caused compensable harm).

### B.   Whether the ALJ Properly Considered the Evidence in Determining Plaintiff's RFC.

Plaintiff argues that the ALJ erred in his assessment of the medical evidence of record. (*See* Doc. 16 at 3-16). Plaintiff contends that the ALJ erred in his assessment of the RFC in two ways: first, he failed to properly consider the limitations imposed by Plaintiff's mental impairments and, second, he failed to appropriately determine the persuasiveness of Dr. Weisman's medical opinion. (*See id.*). More precisely, Plaintiff argues that the ALJ erred by (1) failing to include any mental limitations in the RFC when "every medical source concluded that [Plaintiff exhibited] some level

of compromised mental ability," (*see id.* at 7-8 (citing Tr. at 58-61, 783, 787, 789)), (2) failing to consider Plaintiff's "mental limitations related to pain," (*see id.* at 8-9 (citing Tr. at 783)), (3) failing to include mental limitations in the RFC despite finding that Plaintiff exhibited "mild" limitations in three paragraph B mental functioning areas, (*id.* at 8-11 (citing Tr. at 22, 58-61, 787, 789)), and (4) improperly considering the consistency and supportability of Dr. Weisman's medical opinion, (*id.* at 11-16 (citations omitted)).

In response, the Commissioner contends that substantial evidence supports the ALJ's RFC finding and his consideration of the medical evidence. (*See* Doc. 20 at 5-10).  Accordingly, Defendant argues that substantial evidence supports the ALJ's decision.  (*See id.*).

Because Plaintiff essentially raises two distinct issues, the Court considers each of Plaintiff's arguments in turn below and finds:  (1) the ALJ properly considered Plaintiff's mental impairments; and (2) the ALJ properly assessed the persuasiveness of Dr. Weisman's medical opinion.

### 1.    The ALJ Properly Considered Plaintiff's Mental Impairments.

Where a claimant has a "colorable claim of mental impairment," the ALJ must complete a Psychiatric Review Technique Form, ("PRTF").  *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005).  In completing the PRTF, the ALJ must evaluate how a claimant's mental impairment impacts four broad functional areas, (the "paragraph B criteria"):  "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."

20 C.F.R. § 404.1520a(c)(3).  The ALJ will rate the degree of limitation in each of these areas using the following five-point scale:  "None, mild, moderate, marked, and extreme."  20 C.F.R. § 404.1520a(c)(4).  If the ALJ finds the degree of limitation in each of the functional areas as "none" or "mild," then the ALJ will generally conclude that the mental impairment is not severe and causes no more than a minimal limitation in the claimant's ability to do basic work activities.  20 C.F.R. § 404.1520a(d)(1).

The limitations identified in the paragraph B criteria are used to rate the severity of mental impairments at step two and step three of the sequential evaluation process for the purpose of determining whether mental impairments are severe.  *See* 20 C.F.R. § 404.1520a.  The evaluation of the paragraph B criteria is not a determination of the claimant's mental residual functional capacity, as that determination "requires a more detailed assessment."  *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019).

A claimant's RFC reflects what the claimant can still do in a work setting despite her impairments.  20 C.F.R. § 404.1545(a).  It consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting."  20 C.F.R. § 404.1545(a).  An ALJ will "assess and make a finding about [the claimant's RFC] based on all the relevant medical and other evidence."  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (3).  Put differently, the ALJ must consider all of a claimant's medically determinable impairments, including those that are non-severe.

20 C.F.R. § 404.1545(a)(2); *Schink*, 935 F.3d at 1268.  "The ALJ makes this determination by considering a claimant's physical, mental, and other abilities affected by the impairment." *Schink*, 935 F.3d at 1268 (citing 20 C.F.R. § 404.1545(b)-(d)).  If a claimant has a limited ability to carry out certain mental actions, such limitations may reduce a claimant's ability to do work.  *Id.*  "If an ALJ fails to address the degree of impairment caused by the combination of physical and mental medical problems, the decision that the claimant is not disabled cannot be upheld."  *Id.* at 1269 (citation omitted).

Here, the Court is not persuaded that the ALJ erred by failing to include mental limitations in the RFC.

At step two of the sequential evaluation, the ALJ found that Plaintiff's medically determinable mental impairments of anxiety and depression were non-severe as they "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities."  (Tr. at 22).  In reaching this conclusion, the ALJ found "mild" limitations in three of the four paragraph B criteria – understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing oneself – and "no limitation" in the remaining paragraph B criterion – interacting with others.  (*Id.*).  Despite finding mild limitations at step two, the ALJ included no mental limitations in the RFC.  (*Id.* at 25).

Plaintiff argues that the failure to include mental functional limitations in the RFC constituted error because the "mild" limitations in the paragraph B criteria

required the ALJ to include mental limitations in the RFC.  (*See* Doc. 16 at 8-11).
The Court disagrees.  Rather, it appears that Plaintiff conflates (1) limitations in the
paragraph B criteria, *see* 20 C.F.R. § 404.1520a, with (2) limitations in a claimant's
RFC, *see* 20 C.F.R. § 404.1545.  The limitations in the paragraph B criteria help the
ALJ determine the severity of a claimant's mental impairments or whether a
claimant meets a listing, while limitations in the RFC help the ALJ determine the
level of work that a claimant can perform.  *Compare* 20 C.F.R. § 404.1520a, *with* 20
C.F.R. § 404.1545.  Plaintiff has provided no authority suggesting that the two are
the same or that an ALJ must include mental limitations in the RFC on finding
"mild" limitations in the paragraph B criteria.

 To the contrary, the persuasive precedent demonstrates that ALJs are not
obligated to include mental limitations in the RFC even when they find "mild"
limitations while completing a PRTF.  *See Williams v. Soc. Sec. Admin.*, 661 F. App'x
977, 979-80 (11th Cir. 2016) (finding that the ALJ did not err by failing to include
limitations in the RFC related to the plaintiff's non-severe mental impairment when
the ALJ found that the plaintiff had only "mild" limitations in the paragraph B
criteria); *Medwit v. Comm'r of Soc. Sec.*, No. 2:20-cv-143-JLB-NPM, 2021 WL
1341390, at *5 (M.D. Fla. Feb. 22, 2021) ("Since the ALJ only assessed 'mild'
limitations in the four areas of mental functioning, the ALJ did not err by not
providing a mental RFC."), *report and recommendation adopted*, 2021 WL 1138179
(M.D. Fla. Mar. 25, 2021); *Bryant v. Comm'r of Soc. Sec.*, No. 2:20-cv-294-JLB-NPM,
2021 WL 4067464, at *11 (M.D. Fla. July 29, 2021) ("[T]he ALJ found mild

limitations in all four functional areas[, but] did not err in failing to include [functional] limitations in the RFC related to [the plaintiff's] depression, anxiety, bipolar disorder, or insomnia."), *report and recommendation adopted*, 2021 WL 3855941 (M.D. Fla. Aug. 30, 2021); *Sprague v. Colvin*, No. 8:13-cv-576-T-TGW, 2014 WL 2579629, at *6 (M.D. Fla. June 9, 2014) ("[T]he plaintiff's assertion that the 'mild' findings meant he had some mental functional limitation is unpersuasive."); *Eutsay v. Kijakazi*, No. 21-21164-CV, 2022 WL 1609088, at *9 (S.D. Fla. May 4, 2022) (finding that the ALJ was not required to include mental RFC limitations despite finding "mild" limitations in the paragraph B criteria), *report and recommendation adopted*, 2022 WL 1605318 (S.D. Fla. May 20, 2022).

Additionally, the Court finds that the ALJ expressly considered the evidence identified by Plaintiff in support of her mental impairments. (*Compare* Tr. at 27-28 (citing Tr. at 51-63, 782-83, 786-88), *with* Doc. 16 at 6-8 (citing Tr. at 58-61, 783, 787, 789)).

Specifically, Plaintiff first highlights Dr. Weisman's January 21, 2020 Medical Source Statement in which Dr. Weisman marked "Yes" under the question: "would you expect the increase in pain to be to such an extent that it would cause serious distraction from job tasks and/or result in a failure to complete job tasks in a timely manner . . . ?" (Doc. 16 at 6, 8-9 (citing Tr. at 782-83)). However, the ALJ specifically considered this opinion and found it unpersuasive, noting that "the extreme limitations provided by Dr. Weisman are not consistent with or supported by the record as a whole." (Tr. at 28 (citing Tr. at 782-83)). In support of his

finding, the ALJ highlighted that "the record shows [Plaintiff] regularly presented at her office visits as alert and oriented with normal mood and affect, and in no acute distress." (*Id.* (citing Tr. at 363, 368, 396-97, 399, 421, 440, 448-49, 499, 504-05, 510, 516-17, 520, 526, 537-38, 541-43, 786-88)).  Indeed, upon an independent review of the record, the Court notes that Plaintiff was routinely reported as alert and in no acute distress, oriented to time, place, and person, and having a normal mood and affect in her physical exams, mental status exams, and neurological exams.  (*See id.* at 363, 368, 396, 399, 421, 442, 448-49, 499, 504-05, 510, 516-17, 520, 537, 541-42, 787).  Accordingly, the Court is not persuaded that the ALJ erred in his consideration of Dr. Weisman's medical opinion as it related to Plaintiff's mental impairments.[2]

Similarly, the Court finds that the ALJ appropriately considered the State agency medical consultants' and Dr. Higdon's findings on Plaintiff's mental impairments.  (*See id.* at 28 (citing Tr. at 51-63, 66-80, 785-89)).  As to the State agency medical consultants' findings, the ALJ found the opinions only partially persuasive as the consultants did not have a chance to review the entire record.  (*Id.*).  In fact, the ALJ assessed greater mental limitations in the paragraph B criteria than those proposed by the State agency consultants.  (*Compare id.* at 22, *with id.* at 58, 74).

---

[2]  To the extent that Plaintiff argues the ALJ overlooked functional limitations caused by Plaintiff's pain, as addressed below, the Court finds that the ALJ's findings that (1) Dr. Weisman's medical opinion on Plaintiff's pain was not persuasive and (2) Plaintiff's subjective complaints of pain were not entirely consistent with the medical evidence of record are supported by substantial evidence.

Moreover, as to mental limitations in Plaintiff's RFC, State agency psychologist Dr. Culpepper noted that Plaintiff's functional limitations appeared to be due to her physical impairments rather than her mental impairments.  (*See id.* at 58).  As for Dr. Higdon's findings, the ALJ specifically considered that Plaintiff "was slow to follow instructions and required repetition," but also "was alert, with good eye contact and fluent speech, . . . and was cooperative, but gave inconsistent effort during the examination."  (*Id.* at 27 (citing Tr. at 785-89)).

Accordingly, Plaintiff has failed to identify any relevant evidence that the ALJ failed to sufficiently address in the RFC determination.  Thus, Plaintiff fails to meet her burden to prove that her mental impairments, whether severe or not severe, would have caused additional limitations in her ability to work or prevented her from performing her past relevant work.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Moreover, upon a review of the ALJ's decision, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's mental health impairments did not cause any work-related RFC limitations.  For example, during the RFC assessment, the ALJ considered Plaintiff's own testimony, in which she attested to the pain that she experiences and its effects.  (Tr. at 25-26).  The ALJ also considered the objective medical evidence of record in which Plaintiff was routinely reported as alert and in no acute distress, oriented to time, place, and person, and having a normal mood and affect in her physical exams, mental status exams, and neurological exams.  (*See id.* at 26-28 (citing Tr. at 363, 368, 396, 399, 421, 442, 448-

49, 499, 504-05, 510, 516-17, 520, 537, 541-42, 787)).  Moreover, the ALJ found the State agency consultants' opinions – that Plaintiff's mental impairment was non-severe and she only exhibited mild limitations in the paragraph B criteria – partially persuasive.  (*Id.* at 28 (citing Tr. at 51-63, 66-80)).

The ALJ found that Plaintiff had medically determinable impairments of anxiety and depression; however, the ALJ also noted that they "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities."  (*Id.* at 22).  The ALJ based this finding on several factors, including: (1) the objective evidence of record showing that Plaintiff exhibited normal mental status findings; (2) Dr. Higdon's consultative examination stating that Plaintiff was alert, had good eye contact and fluent speech, had clear thought processes, had normal memory and good concentration, and was oriented to time, place, and person, but that Plaintiff also gave inconsistent effort during the examination; (3) Dr. Weisman's records showing that Plaintiff regularly presented at office visits as alert and oriented, with normal mood and affect, and in no acute distress; and (4) the State agency medical consultants' findings that Plaintiff's functional limitations appeared to be due to her physical impairments rather than her mental impairments. (*See id.* at 22-28 (citing Tr. at 51-63, 66-80, 363, 368, 396, 399, 421, 442, 448-49, 499, 504-05, 510, 516-17, 520, 537, 541-42, 785-89)).  Further, upon an independent review of the record, the Court has found no other evidence supporting Plaintiff's argument that she experiences functional limitations based on her mental impairments.

In sum, because the ALJ properly determined the severity of the Plaintiff's mental impairments and the record supports the ALJ's finding that Plaintiff's mental conditions did not limit her ability to perform work related activities, the ALJ's decision is supported by substantial evidence.  Thus, the Court finds that the ALJ did not err in determining Plaintiff's RFC.  Accordingly, the ALJ's decision is due to be affirmed as to this sub-issue.

### 2.   The ALJ Properly Assessed the Persuasiveness of Dr. Weisman's Medical Opinion.

The Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017.  *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Because Plaintiff filed her claim on July 17, 2018, (Tr. at 19), the revised regulations apply, *see* 20 C.F.R. § 404.1520c.  The regulations require that an ALJ apply the same factors in considering opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions.  20 C.F.R. § 404.1520c(a).  In contrast, under Eleventh Circuit precedent, the "treating source rule" requires the ALJ to afford "[t]he opinion of a treating physician . . . substantial or considerable weight unless 'good cause' is shown to the contrary."  *Phillips*, 357 F.3d at 1240 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  However, the Eleventh Circuit recently held in a published opinion that the Social Security Administration's 2017 revised regulations abrogate the Eleventh Circuit's treating source rule.  *See Harner v. Soc. Sec. Admin., Comm'r*, No. 21-12148, 2022 WL

2298528, at *2 (11th Cir. June 27, 2022). Accordingly, the revised regulations, rather than the Eleventh Circuit's treating source rule, apply in this action. *See id.*

Under the revised regulations, as to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain how those two factors are considered. *See* 20 C.F.R. § 404.1520c(b)(2). In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis—the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source. 20 C.F.R. § 404.1520c(b)(1). The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1).

Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the

record.  *See* 20 C.F.R. § 404.1520c(c)(1)-(2).  Put differently, the ALJ's analysis

considers whether the medical source's opinion is (1) supported by the source's own

records and (2) consistent with the other evidence of record.  *See Cook v. Comm'r of*

*Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6,

2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21,

2021).

When the Commissioner's decision is supported by substantial evidence, the

Court will affirm, even if the Court would have reached a contrary result as the ALJ

and even if the Court finds that "the evidence preponderates against" the

Commissioner's decision.  *See Edwards*, 937 F.2d at 584 n.3.

Here, Plaintiff argues that the ALJ erred in his evaluation of persuasiveness of

Dr. Weisman's opinion.  (*See* Doc. 16 at 11-16).  In response, the Commissioner

contends that the ALJ properly found that Dr. Weisman's opinion is neither

supported by his own findings nor consistent that the other evidence of record.  (*See*

Doc. 20 at 8-10).

Dr. Weisman's medical opinion, a Medical Source Statement signed on

January 21, 2020, explains that:  (1) Dr. Weisman has treated Plaintiff since

February 19, 2019; (2) Plaintiff suffers from "Chronic Low Back Pain, thoracic pain,

[and] Chronic Neck Pain;" and (3) Plaintiff can only perform work at a less than

sedentary level, will struggle to focus at work because of her pain, and will miss more

than two days of work per month.  (*See* Tr. at 782-83).  In considering the

persuasiveness of Dr. Weisman's opinion, the ALJ found that "the extreme

limitations provided by Dr. Weisman are not consistent with or supported by the record as a whole, including his own treatment notes." (*Id.* at 28). The ALJ then provided examples of evidence inconsistent with and unsupportive of Dr. Weisman's opinion. (*Id.*).

In assessing the supportability of the opinion, the ALJ found the opinion to be unsupported by Dr. Weisman's objective findings, including: (1) Dr. Weisman's record from the first office visit with Plaintiff on February 19, 2019, which notes that Plaintiff presented as alert and oriented with normal mood and affect, in no acute distress, and a current pain level of seven out of ten, but also reported that Plaintiff "is receiving greater than 50% analgesic benefit with significant improvement in both pain and function with the use of the medication," (*id.* (citing Tr. at 419-23)); (2) a March 19, 2019 record noting that Plaintiff experienced pain relief of over 50% with current medications, presented as alert and oriented with normal mood and affect, and in no acute distress, and, while not considered by the ALJ, reported that she started physical therapy and "plann[ed] to go to a trip to LA on April 3," (*id.* (citing Tr. at 446-49); Tr. at 446); (3) an April 22, 2019 record noting that Plaintiff "report[ed] approximately 90% [temporary] improvement of her prior pain complaints for over one week following [initial medial branch nerve block injections]," experienced pain relief of over 50% with current medications, and presented as alert and oriented with normal mood and affect, and in no acute distress, (*id.* (citing Tr. at 440-43)); (4) a May 13, 2019 record noting that Plaintiff reported "greater than 85% relief," the ability to be active and "participate in her

daughter's recent wedding," the ability to do light housework at home," and
presented as alert and oriented with normal mood and affect, and in no acute
distress, (*id.* (citing Tr. at 518-21)); (5) a July 16, 2019 record noting that Plaintiff
reported greater than 80% symptomatic improvement with a "gradual return of prior
right and left lumbar pain," and presented as alert and oriented with normal mood
and affect, and in no acute distress, (*id.* (citing Tr. at 514-17)); (6) an August 8, 2019
record noting that Plaintiff received temporary relief from a July 26, 2019 treatment,
reported "greater than 50% analgesic benefit with significant improvement in both
pain and function with the use of medication," conveyed an interest "in more
definitive treatment . . . in the form of RFA," and presented as alert and oriented
with normal mood and affect, and in no acute distress, (*id.* (citing Tr. at 508-11));
(7) a September 12, 2019 record noting that Plaintiff received treatment on August
29, 2019, and "report[ed] greater than 80% improvement . . . [with] some residual
pain[, despite being] pleased with the perceived benefit from the [August 29, 2019
treatment]," and presented as alert and oriented with normal mood and affect, and in
no acute distress, (*id.* (citing Tr. at 502-05)); and (8) an October 31, 2019 record
noting that Plaintiff "report[ed] almost 100% relief of her prior lower back pain, with
improved function[ following a September 20, 2019 Radiofrequency ablation],"
stated that "she is better able to perform her regular exercise program[ and] is also
able to travel for long distances in the car without any significant discomfort," and
presented as alert and oriented with normal mood and affect, and in no acute

distress, (*id.* (citing Tr. at 497-99)).  The Court notes that the ALJ discussed these findings before conducting a persuasiveness determination.  (*See id.* at 27).

As to consistency, the ALJ found the opinion inconsistent with records showing that Plaintiff (1) "regularly presented at her office visits as alert and oriented, with normal mood and affect, and in no acute distress," (2) showed mostly unremarkable findings on physical examinations, (3) did not have any severe abnormalities in spine imaging, and (4) reported relief with treatment and medication.  (*Id.* at 28 (citing Tr. at 363, 368, 396-97, 399, 465-66, 472-73, 526, 537-38, 541-43, 786-88)).

Upon review of the record, the Court finds that the evidence cited by the ALJ constitutes substantial evidence to support his finding that Dr. Weisman's opinion is unsupported by his own objective findings and inconsistent with the other evidence of record.  (*See id.* at 363, 368, 396-97, 399, 419-23, 440-43, 446-49, 465-66, 472-73, 497-99, 502-05, 508-11, 514-17, 518-21, 526, 537-38, 541-43, 786-88).  Specifically, the Court finds that the ALJ considered the limitations imposed by Dr. Weisman's opinion and determined that the opined limitations were neither consistent with nor supported by the record as a whole.  (*See id.* at 28).

In light of this, the Court finds unavailing Plaintiff's argument that the ALJ failed to appropriately consider the evidence of record in reaching his conclusion. This is not an instance in which the ALJ broadly found the opinion inconsistent with stable or normal findings.  Rather, the ALJ here listed specific evidence that he found inconsistent with and unsupportive of the opinion.  (*See* Tr. at 28).  Ultimately, the

Court finds that the ALJ fully addressed the basis for finding Dr. Weisman's opinion unpersuasive. (*Id.*).

To the extent Plaintiff asserts that certain of Dr. Weisman's objective findings support his opinion or that some evidence of record is consistent with and bolsters Dr. Weisman's opinion, the Court finds the argument unpersuasive. The mere fact that other evidence of record supports a different conclusion does not require remand. Rather, it is the ALJ's job to evaluate and weigh evidence and to resolve any conflicts in the record. "In reviewing an ALJ's decision, [the Court] may not decide the facts anew, make credibility determination[s], or re-weigh the evidence, and [the Court] must affirm the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them." *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 508 (11th Cir. 2017) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel v. Comm'r, Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

In sum, the Court finds that the ALJ comprehensively analyzed the supportability and consistency of Dr. Weisman's opinion while assessing its persuasiveness as required by 20 C.F.R. § 404.1520c. Additionally, the Court finds that the ALJ's determination of the persuasiveness of Dr. Weisman's opinion is supported by substantial evidence within the record. Accordingly, the ALJ's decision is due to be affirmed as to this sub-issue.

**C.**   **Whether the ALJ Properly Conducted a
Subjective Symptom Determination.**

Plaintiff argues that the ALJ erred by failing to acknowledge or discuss
Plaintiff's "strong work history" in evaluating Plaintiff's "credibility."  (*See* Doc. 16
at 17-19 (citations omitted)).  While Plaintiff acknowledges that "the credibility
factor of work history [does not] automatically carr[y] more weight than the other
factors . . . fundamental fairness requires [its] consideration."  (*Id.* at 18-19 (citations
omitted)).

In response, the Commissioner argues that the ALJ properly evaluated
Plaintiff's subjective complaints under the regulations and Eleventh Circuit case law.
(Doc. 20 at 10-13 (citations omitted)).

To establish disability based on testimony of pain and other symptoms, a
plaintiff must satisfy two prongs of the following three-part test:  "(1) evidence of an
underlying medical condition; and (2) either (a) objective medical evidence
confirming the severity of the alleged pain; or (b) that the objectively determined
medical condition can reasonably be expected to give rise to the claimed pain."
*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921
F.3d 1221, 1223 (11th Cir. 1991)).  After an ALJ has considered a plaintiff's
complaints of pain, the ALJ may reject them, and that determination will be
reviewed to determine whether it is based on substantial evidence.  *Moreno v. Astrue*,
366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839
(11th Cir. 1992)).  If an ALJ discredits the subjective testimony of a plaintiff, then the

ALJ must "articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."  *Wilson*, 284 F.3d at 1225 (citations omitted).  "A clearly articulated [subjective symptom determination] with substantial supporting evidence in the record will not be disturbed by a reviewing court."  *Foote*, 67 F.3d at 1562.

The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are:  "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations."  *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

The Court finds that the ALJ's subjective symptom evaluation is supported by substantial evidence and the ALJ did not err by failing to expressly analyze Plaintiff's work history in the context of the subjective symptom evaluation.

As an initial matter, while Plaintiff refers to the ALJ's subjective symptom evaluation as a "credibility analysis," SSR 16-3p eliminated the use of the term "credibility" in the sub-regulatory policy.  SSR 16-3p, 81 Fed. Reg. 14166, 14171.[3]

---

[3]  Plaintiff does note this, stating, "Plaintiff will continue to use the word credibility in this section of the brief, since it is in common usage, but only means by using it the Agency's required analysis of consistency and supportability."  (Doc. 16 at 17 n.12).

SSR 16-3p stressed that, when evaluating a claimant's symptoms, the adjudicator will "not assess an individual's overall character or truthfulness" but instead "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id.* SSR 16-3p clarifies that adjudicators will consider whether the "individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." *Id.* at 14170. The ALJ's opinion, read in context, did not assess Plaintiff's "character or truthfulness," but rather, consistent with the two-step process for evaluating symptoms, it assessed Plaintiff's subjective complaints and found that they conflicted with the other evidence in the record. (*See* Tr. at 26-28 (citations omitted)); *see also* SSR 16-3p, 81 Fed. Reg. 14166, 14170-71; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 n.3 (11th Cir. 2018).[4]

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms but her

---

[4] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)). While Social Security Rulings are not binding on the Court, they are still afforded "great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." *Id.* (citing *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)).

statements concerning the intensity, persistence, and the limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record.  (Tr. at 26-28).

The ALJ discussed Plaintiff's allegations of pain and symptoms related to Plaintiff's chronic pain syndrome, obesity, multiple sclerosis, osteopenia, transverse myelitis, spondylosis, myalgia, lumbago, and degenerative changes of the cervical spine, but contrasted these allegations with:  (1) Plaintiff's objective physical examinations throughout the record documenting normal strength and sensation, intact reflexes, normal gait, and negative straight leg raise testing; (2) Plaintiff's ability to ambulate without an assistive device; (3) medical records noting that Plaintiff's pain related medications and treatments were effective in relieving her pain; (4) medical records noting that Plaintiff reported "near complete resolution of her prior lower back pain," the ability to "perform her regular exercise program," and the ability "to travel for long distances in the car without any significant discomfort;" and (5) a March 7, 2020 consultative examination in which Dr. Higdon noted that Plaintiff was cooperative, but gave inconsistent effort during the examination and displayed a steady gait, normal strength, intact sensation, and a negative straight leg raising test.  (*See id.* at 23-28 (citing Tr. at 46, 363, 368, 396-97, 399, 421, 440, 448-49, 499, 504-05, 510, 516-17, 520, 526, 537-38, 541-43, 649-50, 673, 696-97, 732, 766-67, 785-789)).  After considering Plaintiff's subjective symptoms and providing an in-depth discussion and summary of Plaintiff's associated medical evidence, the ALJ concluded that Plaintiff can perform a limited

range of work activity, consistent with the RFC finding, such that she could return to her sedentary past relevant work. (*See id*. at 25-29). Upon a review of the record, the Court finds that the ALJ's subjective symptom evaluation is supported by substantial evidence in the record. (*See id*. at 46, 363, 368, 396-97, 399, 421, 440, 448-49, 499, 504-05, 510, 516-17, 520, 526, 537-38, 541-43, 649-50, 673, 696-97, 732, 766-67, 785-789).

The Court also finds that the ALJ did not err by failing to explicitly discuss Plaintiff's work history in the context of the subjective symptom determination. Plaintiff argues that "her strong work history" enhances her credibility, but as stated above, the ALJ's determination assesses the consistency and supportability of Plaintiff's subjective allegations, not Plaintiff's credibility. *See* SSR 16-3p, 81 Fed. Reg. 14166, 14170-71; *Hargress*, 883 at 1308 n.3. The subjective symptom evaluation is the province of the ALJ and this Court declines to disturb it considering the substantial supporting evidence in the record cited by the ALJ. *See Foote*, 67 F.3d at 1562. Moreover, when an ALJ conducts a subjective symptom evaluation, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision enables the district court to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 533 (11th Cir. 2014) (quotations omitted). Put another way, the ALJ was required to *consider* all of the evidence presented, including Plaintiff's work history, *see* 20 C.F.R. § 404.1529(c)(3), however, he was not required to expressly *discuss* it, *see Mahon v. Comm'r of Soc. Sec.*, No. 8:16-cv-1462-T-JSS, 2017

WL 3381714, at *10 (M.D. Fla. Aug. 7, 2017) (finding that the ALJ did not err by failing to discuss a plaintiff's work history in the context of the credibility assessment).  Moreover, the ALJ noted Plaintiff's past relevant work in his determination and specifically cited Plaintiff's Work History Report.  (Tr. at 28-29 (citing Tr. at 199-205 and finding that Plaintiff can perform her past relevant work as a Medical Clerk, Sales Agent, Financial, and Administrative Clerk)).

In sum, the Court finds that the ALJ considered the entire record of evidence and appropriately found it inconsistent with Plaintiff's subjective complaints of pain. (*See id.* at 18-28); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [Plaintiff's] medical condition as a whole.") (quotations omitted and citing *Foote*, 67 F.3d at 1561).  Accordingly, the ALJ's subjective symptom determination is supported by substantial evidence and the ALJ's decision is due to be affirmed as to this issue.

## VI.      Conclusion

Upon consideration of the parties' submissions and the administrative record, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the Court **ORDERS** that:

1.     The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.      The Clerk of Court is directed to enter judgment accordingly, to

terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Tampa, Florida on September 20, 2022.

_____
Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties